```
1                    UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF NEW YORK
2

3    ------------------------------------X
                                        :
4    IN RE:                             :   09-16161 (SMB)
                                        :
5         KEVIN C. DAVIS,               :   One Bowling Green
                                        :   New York, New York
6                    Debtor,            :
     ------------------------------------X
7    BABITT,                            :   11-01563(SMB)
                                        :
8                    Plaintiff,         :
                                        :
9         -against-                     :
                                        :
10   GRAHAM, et al.,                    :   May 1, 2012
                                        :
11                   Defendants.        :
     ------------------------------------X
12
                    TRANSCRIPT OF PRETRIAL CONFERENCE;
13   DEFENDANTS GRAHAM AND VULCAN CAPITAL CORP'S MOTION
                  TO DISMISS ADVERSARY PROCEEDING
14          BEFORE THE HONORABLE STUART M. BERNSTEIN
                  UNITED STATES BANKRUPTCY JUDGE
15

16   APPEARANCES:

17   For the Trustee:          JONATHAN BODNER, ESQ.
                               Neiger LLP
18                             151 West 46th Street, 4th Floor
                               New York, New York 10036
19
     For Defendants:           MELISSA A. PEÑA, ESQ.
20                             Norris, McLaughlin & Marcus P.A.
                               875 Third Avenue, 8th Floor
21                             New York, New York 10022

22                             LEO L. ESSES, ESQ.
                               Cohen, Tauber, Spievack & Wagner
23                             420 Lexington Avenue, Suite 2400
                               New York, New York 10170
24
     Court Transcriber:        SHARI RIEMER
25                             TypeWrite Word Processing Service
                               211 N. Milton Road
                               Saratoga Springs, New York  12866

     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

1   (Proceedings began at 11:22 a.m.)

2            THE COURT: <u>Kevin Davis</u>.

3            MR. BODNER:  Good morning, Your Honor.

4            THE COURT: Good morning.

5            MR. BODNER:  Jonathan Bodner, Neiger LLP, appearing

6   this morning for the Trustee.

7            THE COURT: Thank you.

8            MS. PEÑA:  Good morning, Your Honor. Melissa Peña

9   from the law firm Norris, McLaughlin & Marcus on behalf of

10   defendants Ford Graham and Vulcan Capital Corp.

11            THE COURT: I guess it's still morning.  Good

12   morning.

13            MR. ESSES:  Good morning, Your Honor.  Leo Esses of

14   Cohen, Tauber, Spievack & Wagner on behalf of defendants

15   Katherine Graham and Nassau Properties and the Ford Graham

16   Family Trust.

17            THE COURT: Thank you.  I'm sorry, I didn't mean to

18   cut you off, Mr. Bodner.  Why don't you give your appearance?

19            MR. BODNER:  Yes, Your Honor.  This is the

20   defendant's motion to dismiss the --

21            THE COURT: No, no, just give your appearance and

22   I'll hear the defendant.

23            MR. BODNER: Jonathan Bodner --

24            THE COURT: Unless you want to argue their motion.

25            MR. BODNER: -- for the Trustee.  No thank you.

3

1          THE COURT: Thank you.

2          MR. NEIGER:  Edward Neiger, Neiger LLP on behalf of

3    the Trustee.

4          THE COURT: Thank you.  Go ahead, Ms. Peña.

5          MS. PEÑA: Your Honor, this is defendant's motion to

6    dismiss all counts in the amended complaint against Ford

7    Graham and Vulcan Capital Corp. pursuant to Federal Rules of

8    Civil Procedure 8(a), 9(b), 12(b)(6) and 17(a).

9          As Your Honor may recall, we initially filed our

10   motion to dismiss in January of 2012.  At the time there were

11   approximately 26 counts of the amended complaint against the

12   defendant.  In late March of 2012 the Trustee filed an

13   opposition to our motion and they've agreed to voluntarily

14   dismiss with prejudice approximately 15 counts of the

15   complaint against the defendant.

16         THE COURT: I suppose you made some progress.

17         MS. PEÑA: I guess, Your Honor.  We provided Your

18   Honor with charts outlining which counts remain and which

19   counts have been dismissed.  We're somewhat prejudice in

20   responding to their opposition in the sense that they've never

21   filed a proposed amended, second amended complaint setting

22   forth which factual allegations may be removed as a result of

23   the dismissal of the claims.  That means that considering all

24   the factual allegations it's our position that they're

25   insufficient to state a cause of action against the

4

1    defendants.

2           The crux of the complaint stems from three entities

3    that were jointly owned by defendant Ford Graham and the

4    debtor Kevin Davis and those entities are Vulcan Capital LLC,

5    Vulcan Holdings Ltd. and Vulcan Capital Management, Inc.  As

6    we set forth in our papers, we believe that the Trustee left

7    standing to pursue these claims on behalf of the Kevin Davis

8    estate in its individual capacity.  A review of the complaint

9    seems to -- the conclusory allegations set forth therein seems

10   to state that the defendant Ford Graham and Vulcan Capital

11   Corp. caused harm to these three Vulcan entities either by

12   fraudulent re-transferring their property or usurping their

13   corporate opportunities.

14          THE COURT: It drops another generation also, doesn't

15   it?  There are subsidiaries of these entities that are

16   involved.

17          MS. PEÑA: That's correct, Your Honor.  So it's our

18   position that the harm has actually occurred to three Vulcan

19   entities and not to the debtor individually and that the

20   claims should be pursued in the derivative capacity.

21          In opposition to that position the Trustee has said

22   that demand on Ford Graham would have been futile and that --

23          THE COURT: Do you think it would have been?

24          MS. PEÑA: I agree, Your Honor, but on the same -- in

25   the same degree that haven't alleged that in the complaint.

5

1   They haven't complied with Federal Rule of Bankruptcy

2   Procedure 23.

3           THE COURT: So I can give them leave to amend that;

4   right?  That's an easy one to cure.

5           MS. PEÑA: Correct.  And I think the harder one to

6   cure is the bulk of the rest of our arguments that we set

7   forth.

8           First, with respect to the remaining counts, the

9   first three counts allege that Ford Graham breached its

10  fiduciary duty with respect to Vulcan Capital LLC, Vulcan

11  Holdings, Vulcan Capital Management, Inc.  It's our position

12  that with respect to Vulcan Capital LLC and Vulcan Management

13  that Ford Graham didn't owe a fiduciary duty because it's

14  barred by the actual governing agreement.

15          THE COURT: Well, but isn't -- look, putting aside

16  whether it says it the graverman of what they're contending is

17  that he engaged in self dealing.

18          MS. PEÑA: Correct.

19          THE COURT: And that's not protected under either

20  Delaware corporation law or any of the agreements you've shown

21  me.  I haven't seen one for Vulcan Holdings but the other two

22  you've shown me obviously have a carve out as Delaware law

23  does.

24          MS. PEÑA: Right.  I mean arguably that could be

25  their position but unfortunately because of the allegations in

6

1   the complaint we just don't think they've pled sufficient

2   information to meet even the liberal pleading standard in Rule

3   8(a).

4            THE COURT: Well, for example, let's take the

5   adjoining lot allegations.

6            MS. PEÑA: Okay.

7            THE COURT: As I understand it the substance is

8   Graham, Ford Graham borrows money from Vulcan Capital LLC.

9   Purportedly to buy the adjoining lot it turns out that

10  Katherine Graham or somebody else ultimately gets the lot.

11  That doesn't sound so bad but then there's an allegation that

12  thereafter Vulcan Capital LLC essentially paid the expenses on

13  the adjoining lot.  Why wouldn't that be self dealing?

14           MS. PEÑA: Well, it's our position that would be

15  first breach of the actual promissory note or a fraudulent

16  conveyance claim that Vulcan Capital LLC would hold.

17           THE COURT: Wait a minute.  If Vulcan Capital is

18  paying the mortgage on the adjoining lots owned ultimately by

19  I guess the Ford Graham Family Trust, what does that have to

20  do with the promissory note?

21           MS. PEÑA: Well, it's our allegation that they

22  breached the prom -- that Ford Graham breached a promissory

23  note by fail -- basically Vulcan Capital entered into a

24  promissory note, loaned Ford Graham money, and that he failed

25  to repay those monies.

7

1          THE COURT: That's not breach of fiduciary duty.

2    That's a contract claim.

3          MS. PEÑA: Right.

4          THE COURT: That's a contract claim that belongs to

5    Vulcan Capital LLC anyway.

6          MS. PEÑA: Right.

7          THE COURT: But just on the allegation -- I forget

8    where it is.  It's in 22 -- well, the adjoining line

9    allegations 46 to 54.  If you just look at Paragraph 52 it's a

10   little indefinite because he says Ford Graham diverted funds

11   from the Vulcan family and I don't know what that means.

12         MS. PEÑA: I mean that's part of the problem with

13   this complaint.

14         THE COURT: Okay.  But let's assume it said Vulcan

15   Holdings or something like that.  Putting aside the standing

16   argument, why isn't that sufficiently alleged that Graham

17   breached his fiduciary duty and self dealt and it says he

18   diverted monies from Vulcan Holdings let's say in order to pay

19   the debt on a property he owns.

20         MS. PEÑA: Well, I think, Your Honor, that -- it's

21   not really just a standing argument.  If he's trying to allege

22   that our client actually breached a fiduciary to Vulcan

23   Capital it's not sufficient for him to say that he took monies

24   from Vulcan Family which he defines to be --

25         THE COURT: I agree with you.

8

1          MS. PEÑA:  -- multiple entities.

2          THE COURT: I agree.  I agree with you that the -- by

3    and large the complaint is too indefinite and it's a problem

4    with -- it's a form of group pleading is what it is.

5          MS. PEÑA: Right.

6          THE COURT: But assuming you could identify the

7    entities --

8          MS. PEÑA: You're correct, Your Honor.

9          THE COURT: Okay.

10          MS. PEÑA: And I think that you brought up a good

11   example because it was dealing with Vulcan Capital LLC but if

12   you take a look at the breach of fiduciary duty claims with

13   respect to Vulcan Holdings Ltd. and Vulcan Management, Inc.,

14   there's not a single allegation in the amended complaint that

15   really addresses a specific transaction involving those

16   entities.

17          THE COURT: Okay.  Vulcan Holdings entities are

18   involved in that theft of corporate opportunity theory.

19          MS. PEÑA: Right.  With respect to -- but even a

20   theft corporate opportunity all that they allege is that

21   there's this entity known as IF&DC and that they've usurped

22   the corporate entities of one of Vulcan Holding's

23   subsidiaries.  They say that they have some type of contract

24   with the government of Bangladesh.  We don't know what the

25   contract is about.  We don't know when it was entered into.

9

1   We don't know if Vulcan Capital Holdings is even in a position

2   to take on that contract because they don't describe it.  And

3   that's with respect to Vulcan Capital Holdings and that's the

4   only transaction they identify as to Vulcan Capital Holdings.

5            With respect to Vulcan Capital Management, there's

6   not a single transaction that refers to that specific entity

7   in the amended complaint.  Your Honor touched upon the

8   transactions as to Vulcan Capital LLC with respect to the

9   adjoining lot.  They further allege that one of Vulcan

10  Capital's subsidiaries, Vulcan paid money to Ford Graham.

11  There's no allegation what those monies were for, whether it

12  was unlawful.  They acknowledge that Mr. Graham has been

13  involved in all of these entities.  So there's no real claim

14  there that those monies weren't for a legitimate purpose.

15           And that's just with respect to the breach of

16  fiduciary duty claim.  The remaining counts in the complaint

17  are Counts 22 and 23 and 24 which allege fraud, equitable

18  fraud and unjust enrichment.  In their opposition they say

19  that these counts still remain against the defendant Vulcan

20  Capital Corp. but also they don't argue in their papers why

21  they have legitimate claims against Vulcan Capital Corp.  So

22  it's unclear to me whether they're still pursuing those claims

23  as against that entity.

24           There's not a single allegation in the complaint

25  regarding fraud being perpetrated by Vulcan Capital Corp. nor

10

1    is there a single claim as to unjust enrichment.

2           With respect to Ford Graham, we don't believe that

3    they meet the heightened pleading requirement.  At a minimum

4    they have to set forth the material misrepresentation or

5    something he failed to disclose.  They don't do that in any

6    instance.  They don't set forth that Kevin Davis relied on a

7    material representation.  They say that they should be --

8           THE COURT: Well, Kevin Davis' reliance would be

9    immaterial anyway.  It's not Kevin Davis who is was defrauded.

10          MS. PEÑA: Right.  You're correct, Your Honor.  It's

11   a little bit confusing because of the way the claims are pled.

12          They attempt to circumvent the 9(b) standard by

13   saying that they should be given time to proceed with

14   discovery.  Meanwhile their counsel submits a declaration

15   saying that they've had Eisner reviewing documents, doing

16   forensic accounting work.  They've received a lot of documents

17   through informal discovery prior to filing the complaint and

18   we feel that they fare no better under the unjust enrichment

19   claim.  As a matter of law, an unjust enrichment claim cannot

20   survive if there is a governing contract.  Their actual

21   complaint says that there are their governing agreements that

22   dictate the responsibilities of Ford Graham as to the three

23   Vulcan entities.

24          THE COURT: Okay.

25          MS. PEÑA: Lastly, they seek leave to file a second

11

1   amended complaint.  It's our position -- Your Honor

2   characterized this as them making progress.  It's our position

3   that this request should be denied because they filed their

4   original complaint and they sought the dissolution of the

5   three Vulcan entities.  The defendants filed a motion to

6   dismiss on various grounds including the fact that they were

7   asserting fraudulent conveyance claims for property that did

8   not belong to the debtor's estate including the whole

9   derivative standing issue.

10          We appeared before the Court on a status conference.

11  Your Honor questioned whether it had jurisdiction to dissolve

12  the three entities.  So they file an amended complaint.  They

13  take out all the claims with respect to dissolution.  They

14  have our motion to dismiss in hand.  They could easily cure

15  the deficiencies with respect to the fraudulent conveyance

16  claims, with respect to derivative standing.  They could have

17  pled that demand on Mr. Graham would be futile.  They don't do

18  that.  They file a similar amended complaint.  We're forced to

19  move to dismiss and then in opposition they say oh, we just

20  realized that we're seeking to -- we're seeking to avoid

21  fraudulent conveyances that don't belong to the debtor's

22  estate.

23          Our original motion to dismiss was on file since

24  June of 2011.  So we don't believe that they should be have an

25  opportunity to amend.  If Your Honor is inclined to consider

12

1   their application we submit that they should be required to

2   file a proposed second amended complaint so that we can

3   determine whether the proposed amendments would be futile and

4   be given an opportunity to brief that.

5            THE COURT: Thank you.

6            MR. BODNER:  Thank you, Melissa, and thank you, Your

7   Honor.

8            Before I address the individual legal arguments, I

9   want to speak for a minute about how we got here.  The motion

10  to dismiss was filed in June.  However, there was settlement

11  in principle.  There was even a motion submitted to Your Honor

12  which for no reason of the Trustee did not go through.  So

13  months and months later after the Trustee --

14           THE COURT: Why did I deny the motion?

15           MR. BODNER: Your Honor asked for additional facts

16  and then in our process of putting together additional facts

17  it fell apart on the other end.

18           THE COURT: Okay.

19           MR. BODNER: But a significant [inaudible] time has

20  occurred because of that and the Trustee has been trying to

21  facilitate settlement.  And one other fact I want as an

22  overarching premise that's going on here, Ford Graham is in

23  control and operating the entire Vulcan family.

24           THE COURT: What does that have to do with the Davis

25  bankruptcy case?  This is an individual Chapter 7.

13

1          MR. BODNER: Yes, Your Honor, because Kevin Davis is

2    a 50 percent shareholder or member in the managing companies

3    as well as the subsidiaries.

4          THE COURT: But so what?

5          MR. BODNER: The operating agreements -- the

6    documents provided show that distributions, profits, voting --

7          THE COURT: But you have not alleged a direct claim

8    against Ford -- I'm sorry, against Mr. Graham under the

9    operating agreements.  There's no breach of contract claim

10   here.  That would be a direct claim, I understand that, but

11   you're not alleging that.

12         MR. BODNER: Your Honor, Ford Graham owed direct

13   individual fiduciary duties to Kevin as the other 50-50

14   managing member.

15         THE COURT: But when I read your complaint it sounded

16   to me like you were saying Graham stole money and he didn't

17   cut Davis in for 50 percent of what he stole.  I don't think

18   that's a claim.

19         MR. BODNER: Yes, Your Honor.  But that goes to

20   support breach of fiduciary duties that members owe other

21   members under Delaware law as well as under the operating

22   agreements.

23         THE COURT: I know but the fact that somebody owes a

24   breach of fiduciary duty doesn't give the victim a direct

25   claim.  All of these entities are insolvent in both Davis --

14

1   according to the pleadings are insolvent and both Davis and

2   Graham owe fiduciary duties to the entire community of

3   interest including the creditors, the estate, the other

4   members if it was an LLC but that doesn't give them a direct

5   claim for breach of fiduciary duty.  Under Delaware law -- at

6   most he might have a derivative claim.

7           MR. BODNER: Your Honor, respectfully, the Trustee

8   submits that in analyzing whether claims are individual or

9   derivative you look at who was harmed and who would benefit

10  from the recovery.

11          THE COURT: And who was harmed -- when Graham --

12  according to your complaint -- you didn't say it but stole

13  money from Vulcan -- what is it, Elditon?

14          MR. BODNER: Elditon.

15          THE COURT: Elditon, who other than Vulcan Elditon

16  was injured directly?

17          MR. BODNER: Vulcan Capital LLC.

18          THE COURT: No, it wasn't.  It wasn't.  It was

19  injured to the same extent and in proportion to its interests

20  in Vulcan Elditon that all of the creditors of Vulcan Elditon

21  were injured.  That's a difference between a direct and

22  derivative claim.  Everybody was injured the same.  All the

23  shareholders, all the members, all the creditors were injured

24  the same.

25          MR. BODNER: But, Your Honor, those are not the only

15

1   claims in the complaint and analyzing the nature of the harms.

2   We look at the operating agreements.

3            THE COURT: You haven't alleged a claim under the

4   operating agreements.  So let's move off that.  If you have a

5   breach of contract claim that Mr. Graham breached his contract

6   to Mr. Davis I would agree with you that's a direct claim but

7   you have not alleged that.

8            MR. BODNER: Your Honor --

9            THE COURT: Because I don't see a breach here.

10           MR. BODNER: The allegation is that Mr. Davis

11  suffered harms by virtue of his membership interest.

12           THE COURT: All of the creditors suffered harm by

13  virtue of what Graham did if you're right that Graham did bad

14  things.  But that is the essence of the direct claim of the

15  entity whose property he stole.

16           MR. BODNER: Your Honor, respectfully, those aren't

17  the only claims in the complaint.

18           THE COURT: I know they aren't the only claims in the

19  complaint.  What --

20           MR. BODNER: There's also voting, being pushed out

21  and not receiving --

22           THE COURT: You don't explain that.

23           MR. BODNER: Your Honor --

24           THE COURT: You have conclusory allegations.  You put

25  in an allegation that he ran a three part Monte corporation.

16

1  That's a conclusory allegation.  It's not entitled to any

2  weight on a motion to dismiss.

3          MR. BODNER: Your Honor, we tried to substantiate

4  that as best as we could by putting in -- to show that the

5  Vulcan entities -- it's a matter of switching one word around

6  or not.  Vulcan Capital Corp., Vulcan Capital LLC.

7          THE COURT: What does that have to do with Davis?  It

8  seems to me that Davis is either a member or a shareholder.

9  He's equity.

10          MR. BODNER: Yes.

11          THE COURT: And he only has a right to distribution

12  if the entities are solvent.

13          MR. BODNER: Yes, Your Honor.

14          THE COURT: You allege that the entities were all

15  insolvent at relevant times.  You don't allege that they would

16  have been solvent but for the transfers of their property by

17  Graham.  I'm not suggesting that gives you a direct claim but

18  you don't even allege that.  So what is it that Graham did

19  that harmed Davis' financial interest?

20          MR. BODNER: Well, I guess that's it.  It was the

21  years of taking of these types of transactions, the real

22  estate transactions, the Bangladesh transaction, the half

23  dozen Vulcan --

24          THE COURT: What was the Bangladesh transaction?

25          MR. BODNER: There was a contract with the government

17

1   of Bangladesh which --

2          THE COURT: What was the nature of the contract?

3          MR. BODNER: The nature of the contract was an energy

4   contract with the government to do some sort of energy project

5   and instead of using the entity which -- the allegation is

6   instead of using the entity which Mr. Graham was a 50 percent

7   owner with Kevin Davis he used another entity with a very,

8   very similar name to usurp the opportunity.

9          THE COURT: And usurp the opportunity is a conclusory

10  statement.  You haven't given me in the complaint any of these

11  underlying facts about what this is about.

12         MR. BODNER: Well, we acknowledge that some

13  transactions we have more details, date, time, place, amounts

14  and others we have less.

15         THE COURT: Let me ask you a different question.

16  Let's assume that you could just replead these as derivative

17  claims and solve the 23.1 issue.  What would the purpose be?

18  First of all, would this Court have jurisdiction over claims

19  brought on behalf of creditors of a non debtor entity

20  essentially or a non debtor estate against a non debtor?  What

21  would my jurisdiction be over that?  The Trustee wouldn't be

22  suing in his capacity as representative of the estate in that

23  situation.

24         MR. BODNER: I think that's right, Your Honor.  I'm

25  not sure.  We believe that these are actual claims of Davis

18

1    and --

2         THE COURT: That I disagree with you.  Unless you can

3    show me a direct claim these are clearly derivative claims.

4         MR. BODNER: But, Your Honor, Davis had individual

5    rights in these entities.

6         THE COURT: If you recover a judgment let's say for

7    the diversions you have identified respecting Vulcan Elditon,

8    because that's the most specific of the allegations, where

9    would the proceeds of that recovery go?

10        MR. BODNER: To Davis' estate.

11        THE COURT: What about all the creditors of this

12   insolvent entity?  You said that the entity is insolvent.

13        MR. BODNER: Well, the entity is -- these are 50-50

14   entities.

15        THE COURT: But they have creditors.  Otherwise they

16   wouldn't be insolvent.

17        MR. BODNER: We don't know the creditor body of that

18   specific Vulcan entity.

19        THE COURT: That's precisely the problem with you

20   representing.  Don't you have an intolerable conflict as a

21   representative of the shareholder's estate of recovering money

22   on behalf of an insolvent entity and then paying it to the

23   shareholder or the member?

24        MR. BODNER: Well, also another issue as to the

25   solvency was at the time these actions were filed there were

19

1   the claims of Plains Capital Bank against the individuals and

2   the guarantees in some of the entities.  Those claims and

3   issues as to the solvency at this stage in the case as we have

4   resolved the issues with Plains may actually impact the

5   solvency --

6           THE COURT: But the issue is the solvency at the time

7   of the transfer, not today post settlements.

8           MR. BODNER: That's correct.  I'll address two other

9   points.

10          THE COURT: Go ahead.

11          MR. BODNER: On the fraud --

12          THE COURT: What's the material misrepresentation

13  that was made?  Where is it set forth in the complaint?

14          MR. BODNER: The concept is if Ford Graham was using

15  shell entities to set up other entities and to divert

16  opportunities there was a scheme of misrepresentation.

17          THE COURT: What's the misrepresentation?  You have

18  to identify -- under Rule 9(b) you have to identify the

19  misrepresentation.

20          MR. BODNER: Well, we identi --

21          THE COURT: It sounds to me like you're saying he

22  fooled other parties, not Davis.

23          MR. BODNER: Possibly.  But, Your Honor, we identify

24  trusts.  We identify the Nassau entities.

25          THE COURT: What is the misrepresentation?  It's a

20

1  fraud case.  What's the misrepresentation?

2          MR. BODNER: I understand Your Honor's point.  Thank

3  you, Your Honor.

4          On unjust enrichment I would just like to say --

5  they say that because there's some governing agreements there

6  can't be a claim in equity because you have remedies of law.

7  A review of the --

8          THE COURT: Isn't that the law?  If the party's

9  relationship is governed by an agreement there's no unjust

10  enrichment claim.

11          MR. BODNER: Absolutely, Your Honor.  I have two

12  points to that.  One is the actual agreements that we have,

13  some that were submitted to Your Honor with these pleadings,

14  don't provide a remedy for some of the issues of the

15  distributions, the not receiving anything but the capital

16  contribution.

17          THE COURT: But the only claim -- at bottom the only

18  claim that Davis has against Graham is that he didn't get --

19  Graham took the money that he was entitled to as a

20  distribution under the governing agreement.

21          MR. BODNER: That's the main one, yes.

22          THE COURT: But you haven't alleged that in the

23  complaint.

24          MR. BODNER: Then that would bring us to the final

25  point on seeking leave to amend.  The Trustee's position is

21

1   amendment is liberally granted.

2          THE COURT: But you've amended twice or you've

3   amended once.

4          MR. BODNER: It's been amended once and while Ford

5   Graham is using as a sword the dismissal of those 15 or so --

6          THE COURT: I pay no attention to that.

7          MR. BODNER: All right.  So I would just say in terms

8   of time a big portion of the time that's gone by has been

9   substantial efforts by the Trustee to try to amend -- excuse

10  me, to settle.  Also, Ford does have the companies.  He's

11  operating them.  There's business being transacted and Kevin's

12  out.  And finally we would submit on a motion --

13         THE COURT: Well, he may have a claim under the -- or

14  the estate may have a claim under the governing agreements

15  which you haven't set forth.

16         MR. BODNER: We would propose -- we would attach a

17  proposed second amended complaint with a motion to seeking

18  leave.  We would be --

19         THE COURT: Well, you've made the -- you've asked for

20  leave.  I have another way to deal with it.  I'll give you the

21  last word.

22         MR. BODNER: Thank you, Your Honor.

23         THE COURT: Thank you.

24         MS. PEÑA: Your Honor, just to clarify the record.

25  It wasn't our intention to use the dismissal of the counts as

22

1   a sword.

2          THE COURT: It doesn't matter.  It doesn't affect my

3   decision at all.

4          MS. PEÑA: And we just wanted to hit home on the

5   issue with respect to the derivative nature of these claims.

6   Your Honor's correct.  They've alleged that they're insolvent.

7   Mr. Bodner had raised the issue that maybe solvency is influx

8   because of the Plain's Bank settlement but we want to point

9   out that Plain's Bank was a secured creditor of these three

10  Vulcan entities.  So if there's any recovery for these three

11  entities you shouldn't be jumping over the secured creditors.

12         THE COURT: Thank you.  Look, I'm going to grant the

13  motion.  All the claims that you have alleged are non direct.

14  They're derivative claims to the extent you've alleged claims.

15  They all involve transfers either of entities in which Davis

16  has 50 percent interest or effective corporate opportunity of

17  entities in which Davis has a 50 percent interest or in

18  entities that drop down in the familial structure that they

19  used.  These are derivative claims.  The injury is to the

20  corporation or the LLC or whose property was transferred or

21  whose opportunity was usurped.  All creditors suffer alike.

22  All shareholders suffer alike and by definition those are

23  derivative claims.  I agree that the estate lacks standing to

24  assert those claims as direct claims.

25         Now, with respect to derivative claims, I suppose

23

1   that you could solve the procedural problem.  I have a serious

2   question about whether or not I have jurisdiction over a claim

3   by the Trustee, by Mr. Babitt as representative of the estate

4   of Vulcan Capital LLC for example against Graham brought for

5   the benefit of Vulcan Capital LLC.

6          If I had jurisdiction over that claim I'm not sure I

7   wouldn't grant an abstention motion.  It's got really -- it's

8   far removed from this bankruptcy particularly given the

9   allegation that all these entities were insolvent.  It seems

10  to me on the surface the way it's pleaded that Davis has no

11  interest in this case.

12         Now, with respect to the failure to state a claim,

13  there are a lot of conclusory allegations in the complaint.

14  The specific allegations in the complaint relate to the

15  specific transfers by Vulcan Elditon which are set forth in

16  25, Paragraphs 25 to 39 although there's no allegation that

17  those transfers are wrongful in any sense.

18         Just sit down.

19         There are the allegations regarding the usurpation

20  of the corporate opportunities belonging to IF&DC-Vulcan

21  Energy Group at Paragraphs 40 to 45.  You've amplified that a

22  little bit but there's no really no information about what the

23  corporate opportunity is.  You have allegations -- I mention

24  regarding the adjoining lot, the borrowing the money and only

25  repaying half of it is a breach of contract claim.  As I said,

24

1   there are allegations in there that although somewhat

2   indefinite and conclusory that Graham or the Family Trust or

3   one of his affiliates used property -- one of these Vulcan

4   entities to pay the expenses on property that he or his

5   affiliated owned and it sounds to me like that could be a

6   direct claim not belonging to Davis but that one strikes me as

7   being sufficiently - well, it's not sufficiently pled because

8   it's conclusory but there is a germ of a claim there.

9           The general allegation that Ford Graham and/or

10  Katherine Graham and/or Todd Graham unlawfully diverted assets

11  of the Vulcan family in breach of the governing agreements is

12  just too conclusory as is -- I'm not quite sure I understand

13  this but this allegation that Todd Graham transferred -- Todd

14  Graham and/or Ford Graham transferred a $4 million debt of

15  Todd Graham to Vulcan Capital.  That's supposed to mean that

16  Vulcan Capital assumed that debt?

17          MR. BODNER: Yes, Your Honor.

18          THE COURT: Well, again, that certainly may be a

19  fraudulent obligation that could be asserted by Vulcan Capital

20  but it's not a direct claim of Mr. Davis.

21          Let me go through some of these other matters.  Now,

22  with respect to the fraud Counts 22 and 23, they are legally

23  insufficient.  You say that misrepresentations were made.  You

24  don't identify the misrepresentations.  You don't identify any

25  reliance.  In fact, I don't even know if you're saying Davis

25

1  relied on these or some third parties relied on them and Davis

2  can't assert the fraud practice against other parties.  You've

3  also got no allegations in the complaint relating to Vulcan

4  Management.  I think they're encompassed in Count 3.  There's

5  no basis to support that count.

6        Count 24 is the unjust enrichment claim.  It does

7  appear that there are governing agreements.  It's impossible

8  to tell whether these unjust enrichment claims relate to those

9  governing agreements or to something else.  It's just too

10 indefinite.

11       So what I will do is I will give you leave to

12 replead but you send the draft complaint to the defendant.  If

13 you think it's not asserted in good faith within the meaning

14 of Rule 9011 you send them a safe harbor letter.  If we go

15 through this again and you're just repeating these mistakes, I

16 will entertain a motion for sanctions against counsel because

17 I think the defendants have spent a lot of time making these

18 motions.  The debtor reviewed the first one because apparently

19 it was mooted by the filing of an amended complaint -- some

20 claims but this is an amended complaint which certainly,

21 certainly should not have been filed in the form in which it

22 was filed.

23        Now, the one thing I don't understand is the

24 parties reached a settlement and I did not approve it

25 presumably because there wasn't enough information about the

26

1   claims that were being settled.

2          MR. BODNER: Your Honor simply asked us for a

3   supplemental affidavit.  Just to --

4          THE COURT: Because I didn't know what the claims

5   were that you were settling.

6          MR. BODNER: -- describe the nature of the claims a

7   little bit clearer.

8          THE COURT: So what happened?

9          MR. BODNER: We drafted an entire new 9019 motion

10  amplifying it.  We were about to file it.  However, the

11  settlement included a check to be held in escrow and Mr.

12  Graham never gave that check --

13         THE COURT: I remember that now.  It's a settlement

14  off the -- that was like a $250,000.00 check or something.  Is

15  that settlement still possible?  You're going to spend more

16  money than that litigating this case.

17         MR. BODNER: We've offered -- we've discussed it with

18  the Trustee and in light of certain solvency issues as well

19  as --

20         THE COURT: I've read your complaint.  Believe me, I

21  know enough about this case now to --

22         MR. BODNER: We'd like to settle it even for less.

23         THE COURT: Well, don't bet against yourself, Mr.

24  Bodner.  Look, I think this is a case that should be settled.

25  For the amount of money you're talking about I don't believe

27

1   you should pay tribute but as a practical matter you're going

2   to pay more money to defend this even on another motion to

3   dismiss and then it's going to be -- so I will grant you --

4   you can submit an order granting the motion for the reasons

5   stated on the record.  You don't have to recount those

6   reasons.  Anybody can buy the transcript.  With leave to

7   replead within 30 days and then leave a space blank and I'll

8   fill in a date for the pretrial conference.

9           MR. BODNER: And for the pretrial conference there's

10  a couple of defendants that put in an answer, Ford Graham's

11  wife as well as some other parties.  I guess at that pretrial

12  conference --

13          THE COURT: Why don't we just adjourn that -- unless

14  there's an objection to it we'll just adjourn the pretrial

15  conferences to the date I fix in the order.  When are the

16  pretrial conference -- when is the pretrial conference in this

17  matter?

18          MR. BODNER: I think it was today.

19          THE COURT: All right.  I will -- let me see.  I take

20  it back.  I had it.  I'll adjourn it on the record sine die

21  and when I fix the date just include in the order the date

22  that the pre -- the entire pretrial conference will be on

23  whatever date I fill in which will be some date after the

24  pleadings will be closed and following the filing of the

25  second amended complaint if it comes to that.

28

1          MR. BODNER: Thank you, Your Honor.

2          MS. PEÑA: Thank you, Your Honor.

3          THE COURT: Thank you.

4    (Proceedings concluded at 11:54 a.m .)

5                      *  *  *  *  *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

29

1        I certify that the foregoing is a court transcript from

2  an electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5        _____

6                              Shari Riemer

7  Dated:   December 6, 2013

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25